UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION FOR SUMMARY, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (DKT. 72)**

**I.   Introduction**

Comprehensive Medical Center, Inc. ("Plaintiff" or "CMC") filed this action in the Los Angeles Superior Court on September 13, 2017. Complaint, Dkt. 1-1 at 3. State Farm General Insurance Company ("Defendant" or "State Farm") removed the action based on diversity jurisdiction. Dkt. 1. Plaintiff filed a First Amended Complaint ("FAC") on January 5, 2018. Dkt. 16. It is the operative pleading and advances two causes of action: (i) breach of contract; and (ii) breach of the implied covenant of good faith and fair dealing. FAC, Dkt. 16 ¶¶ 28-39. The claims arise from a State Farm insurance policy issued to CMC, on which CMC made claims, including for lost business income. *See id.* ¶¶ 1-4.

On January 15, 2021, Defendant filed a Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (the "Motion"). Dkt. 72. Plaintiff filed an opposition to the Motion (the "Opposition") on March 26. Dkt. 77. Defendant filed a reply (the "Reply") on April 12. Dkt. 78. On June 7, 2021, a hearing on the Motion was held. Dkt. 81. During the hearing the parties were directed to provide supplemental briefing on the following issues: (i) whether the period of restoration under the insurance policy at issue includes time for repairing damage resulting from another tenant's conduct; and (ii) whether, under *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 396 (2d Cir. 2005), the period of restoration includes the time required for the insured to resume operations in the insured's own unit or in the building in which the unit is located. Dkt. 81. The CMC brief was not to exceed ten pages; the State Farm brief was not to exceed five pages. *Id.* The Motion was to be taken under submission upon the filing of these briefs. *Id.* On June 21, 2021, CMC filed its supplemental brief (the "Suppl. Brief"). Dkt. 82.[1] On June 28, 2021, State Farm filed its reply (the "Reply to Suppl. Brief"). Dkt. 83.

For the reasons stated in this Order, the Motion for Summary Judgment is **GRANTED**.

---

[1] CMC exceeded the 10-page limit and submitted a 15-page brief. Defendant State Farm moved to strike the Supplemental Brief. Dkt. 83 at 6. In the interest of judicial economy and to avoid further delay of the matter, that request is denied. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

## II. Factual Background

### A. The Parties

CMC is a California corporation whose principal place of business is in Los Angeles County. Dkt. 16 ¶ 5. CMC owns and operates medical clinics in the cities of Los Angeles, El Monte and Pomona. *Id.* ¶ 8. State Farm is an Illinois corporation, which is authorized to do business in California. *Id.* ¶ 6.

### B. The Operative Facts

#### 1. The Insurance Policy

State Farm issued to CMC a Medical Office Insurance Policy, Number 92-YD-0267-1 (the "Policy"), which was effective from April 26, 2016, to April 26, 2017. Separate Statement of Disputed Material Facts and Additional Material Facts, Dkt. 77-1 ¶ 1. The parties do not dispute that the Policy applies to Plaintiff's claim for lost business income. *Id.* ¶ 3.

#### 2. Water Loss Events and State Farm's Response

On June 3, 2016, CMC's medical office, which is located at 10301 Garvey Avenue, Suite 100, El Monte, California (the "Insured Office"), was damaged due to a water leak. *Id.* ¶ 9. This loss was reported to State Farm on June 4, 2016. *Id.* ¶ 10. On June 6, 2016, State Farm completed its first contact with CMC, and was advised that the loss was caused by a water leak that originated from the space leased by a different tenant on the floor directly above the Insured Office *Id.* ¶ 11-12. On June 7, 2016, State Farm inspected the Insured Office. *Id.* ¶ 13.

On July 20, 2016, Brandt Benson, CMC's remediation contractor, advised State Farm that the period of restoration ("POR") would be between three and five months. *Id.* ¶ 14.[2] At his subsequent deposition, Benson testified that he could have completed the repairs within three to five months from the first water loss. *Id.* ¶ 15. CMC's public adjuster advised State Farm that the estimated POR would be two months. *Id.* ¶ 17. Anthony Kingsley, M.D., who owns CMC, testified that, at the time of the water loss, they "were about to get started" on repairs and that they "already started fixing up to go back to regular operations." *Id.* ¶ 20. On August 3, 2016, State Farm made a payment of $164,500 to CMC for loss of business income during the projected POR. *Id.* ¶ 36.

On September 20, 2016, a second loss occurred at the Insured Office due to another water leak from the same space occupied by the same tenant directly above the Insured Office. *Id.* ¶¶ 18-19. State Farm then made a second payment for the second loss with respect to CMC's costs for emergency services, water clean-up and mold/bacteria testing. *Id.* ¶ 22. On or about October 3, 2016, State Farm, Benson and CMC's public adjuster attended an on-site meeting at which they agreed that the new POR would be approximately six months, *i.e.*, from June 3, 2016 to November 30, 2016. *Id.* ¶ 51.

On October 10, 2016, the Insured Office was damaged due a third water leak from the same space occupied by the same tenant directly about the Insured Office. This leak was less extensive than the

---

[2] An estimate for repairs and corresponding invoices also reflect a three-month POR. *Id.* ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

prior ones and did not cause any new damage to the Insured Office. *Id.* ¶¶ 23-26. At Benson's deposition, he testified that if work had started one month after this third water loss, *i.e.*, in November 2016, all repairs could have "easily" been completed in two to three months, which would have resulted in an overall eight-month POR. *Id.* ¶ 27. As of October 12, 2016, State Farm had paid $235,733.57 to the insured under Coverage B (Business Personal Property), an amount that exceeded the coverage limits, but with the reservation of the right to seek credit for overpayment. *Id.* ¶¶ 28-29, 73.

On March 22, 2017, a fourth water leak occurred from an unrelated source. *Id.* ¶ 30. State Farm did not make any payment to CMC due to this leak. *Id.* ¶ 31.

On March 26, 2021, counsel for CMC filed Benson's declaration, which was signed on March 25, 2021. Benson Decl. Dkt. 77-3. In it, Benson provided additional statements explaining and modifying his prior estimates of repairs. *Id.* ¶¶ 1-11. Benson stated that his previous statement regarding a three- to five-month POR for repairing the Insured Office did not take into account "all aspects" of restoration. *Id.* ¶ 11. These included demolition, permitting, inspections, testing and returning materials and equipment back to the Insured Office. *Id.* ¶ 9. Benson emphasized the government-mandated permitting process and inspections that could add several months to the time required to complete repairs and restoration. *Id.* Thus, he declared that "it would not be unrealistic for the repairs to take twelve months or more." *Id.* He also declared that repairs to the Insured Office should not have started until the problems with the unit above the Insured Office had been corrected. *Id.* ¶ 7. This would have required addressing drainage in its bathrooms as well as conducting appropriate testing to ensure that the cause of the leaks had been corrected so that there would not be any more leaks into the Insured Office. *Id.*

        3.       <u>The Assessment by State Farm of CMC's Business Income</u>

The Policy provides the following regarding coverage for a claim of lost business income:

> 1. Loss of Income
>
> a. We will pay for the actual "Loss of Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by accidental direct physical loss to property at the described premises. The loss must be caused by a Covered Cause Of Loss . . . .
>
> b. We will only pay for "Loss of Income" that you sustain during the "period of restoration" that occurs after the date of accidental direct physical loss and within the number of consecutive months for Loss Of Income And Extra Expense shown in the Declarations. We will only pay for "ordinary payroll expenses" for 90 days following the date of accidental direct physical loss.
>
> …
>
> 3. Extended Loss of Income
>
> a. If the necessary "suspension" of your "operations" produces a "Loss Of Income" payable under this policy, we will pay for the actual "Loss Of Income" you incur during the period

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

> that: (1) Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and "operations" are resumed; and (2) Ends on the earlier of: (a) The date you could restore your "operations", with reasonable speed, to the level which would generate the Net Income amount that would have existed if no accidental direct physical loss had occurred; or (b) 60 consecutive days after the date determined in Paragraph a.(1) above.

Dkt. 77-1 ¶ 6.

On June 21, 2016, State Farm requested documents from CMC including its revenue statements from June 2014 to May 2016, as well as tax return materials that would show its reported income, loss and expenses. *Id.* ¶¶ 32-33. CMC provided State Farm with documents in response to this request. *Id.* ¶ 38.

On September 19, 2016, State Farm retained Keith Kinsel CPA/CFF, CFE, to conduct a forensic accounting examination of the documents provided by CMC. *Id.* ¶ 37. The stated purpose of this examination was to assist State Farm in determining if any additional amount was owed to Plaintiff as covered business income loss. *Id.*

Kinsel received and reviewed the following documents: (1) Business Tax Returns Form 1120S for 2014; (2) Checks issued and billing invoices for July to August 2016; (3) E-mail correspondence with the insured; (4) Lease Agreement dated 1/1/2004; (5) Marketing Agreement dated 12/2/2015; (6) Copies of Paychecks issued dated 7/30/2016; and (7) Monthly Profit and Loss Statements for 2014 and 2015. *Id.* ¶ 38. Kinsel contacted CMC several times to request additional documents related to CMC's loss of business income claim. *Id.* ¶¶ 39-40.

On December 22, 2016, Kinsel advised State Farm that he was unable to assess CMC's loss of business income completely as a result of the water loss. *Id.* ¶¶ 41-42. He stated that this was because there was a lack of information from CMC. *Id.* ¶ 42. He estimated that CMC's loss of business income from June to December 22, 2016 was not more than $50,000. *Id.* ¶ 44. After receiving additional financial documents from CMC, Kinsel's calculation for those same six months increased to $145,408. *Id.* ¶ 45.

State Farm determined the POR was no more than six months based on its inspections, communications with CMC's representatives and the estimate of repairs from Benson. *Id.* ¶ 50. The primary dispute in this action is with respect to the POR and whether it is six or 16 months. *Id.* ¶ 50. Plaintiff seeks at least $1,528,670 for loss of business income for a claimed POR of 16 months. *Id.* ¶ 129. The appraisal panel, whose report is discussed below, determined loss of business income for a POR of 16 months was $381,436. *Id.* ¶ 65.

The Policy provides the following regarding the POR:

> 6. "Period of Restoration": a. Means the period of time that:
>
> (1) Begins immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the described premises; and
>
> (2) Ends on the earlier of: (a) The date when the property at the described premises should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) The date when business is resumed at a new permanent location.

*Id.* ¶ 7.

        4.    <u>The Appraisal Panel</u>

On January 5, 2018, CMC filed the FAC. *Id.* ¶ 53. On January 18, 2019, State Farm filed a Motion to Compel Insurance Policy Appraisal and Stay the Action Pending the Completion of Appraisal. *Id.* ¶ 60. On June 11, 2019, that motion was granted in an order directing the appraisal panel to determine the appropriate baseline income for a maximum POR of 16 months. *Id.* ¶¶ 61-62. On December 17 and 18, 2019, the appraisal was conducted. *Id.* ¶ 63. On April 6, 2020, the appraisal panel issued the award, but did not determine the POR. *Id.* ¶¶ 64, 67. The panel's appraisal award concerning CMC's loss of business income is summarized in the following table:

| Month | Amount |
|---|---|
| June 2016 | $17,228 |
| July 2016 | $14,525 |
| August 2016 | $11,115 |
| September 2016 | $23,080 |
| October 2016 | $20,869 |
| November 2016 | $29,597 |
| December 2016 | $15,231 |
| January 2017 | $12,227 |
| February 2017 | $26,698 |
| March 2017 | $24,232 |
| April 2017 | $33,803 |
| May 2017 | $8,251 |
| June 2017 | $33,924 |
| July 2017 | $32,228 |
| August 2017 | $39,586 |
| September 2017 | $38,843 |
| **TOTAL** | $381,437 |

*Id.* ¶ 65.

On May 22, 2020, State Farm filed a Motion to Confirm Appraisal Award (the "Motion to Confirm"). Dkt. 64. Plaintiff opposed the Motion to Confirm on August 21, 2020, Dkt. 67, and Defendant filed a reply on September 21, 2020, Dkt. 68. On October 22, 2020, the Motion to Confirm was taken under submission. Dkt. 70. On June 7, 2021, the Motion to Confirm was granted. Dkt. 80. Based on the appraisal award, State Farm determined that it had issued a payment covering eight months of lost business income, *i.e.*, June 3, 2016 to January 31, 2017. Dkt. 77-1 ¶ 69.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

        5.      <u>The Kingsley Action</u>

On or about March 8, 2017, CMC filed an action in the Los Angeles Superior Court, *Kingsley v. H.T.T. Group*, No. BC652818 (Cal. Super. Ct. Mar. 8, 2017), that was based on the June 3, 2016, water loss (the "Kingsley Action"). *Id.* ¶ 70. The defendants included the landlord for the tenant of the unit above the Insured Office. *Id.* ¶ 70-71. On or around January 18, 2019, CMC and defendants entered into a settlement agreement in that action. *Id.* ¶ 71. Under its terms, CMC received a $1 million payment from Farmers Insurance, the insurer of the defendants in the Kingsley Action. *Id.*

**III.**    <u>**Evidentiary Objections**</u>

On April 12, 2021, State Farm filed evidentiary objections relating to the Declarations of Travis Corby, Brand Benson and Anthony Kingsley. Dkt. 78-2. These evidentiary objections are addressed in a separate order.

**IV.**    <u>**Requests for Judicial Notice**</u>

State Farm has filed a request for judicial notice of the FAC in this action ("State Farm's RJN"). Dkt. 75. This request is **DENIED** as unnecessary. *See Chaffey Joint Union High Sch. Dist. v. FieldTurf USA, Inc.*, No. EDCV 16-204 JGB (DTBx), 2017 WL 3048658, at *2 n.2 (C.D. Cal. Feb. 28, 2017) ("The Court may of course take judicial notice of filings and pleadings on its own docket . . . . But such requests are unnecessary; Defendants may cite directly to the docket to reference such orders." (citations omitted)).

**V.**    <u>**Analysis**</u>

        A.      Legal Standards

A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 324. Where the non-moving party will have the burden of proof on an issue, the movant need only demonstrate that there is an absence of evidence to support such claims. *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

"By its very terms, th[e] [summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Moreover, "summary judgment will not lie if the dispute about a material

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

With certain exceptions, only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *Id.* All inferences are to be drawn in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). This means that "where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

A court is not required to assume that "general averments embrace the 'specific facts' needed to sustain the complaint." *Id.* "The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Id.* Thus, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of material fact and defeat summary judgment. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009); *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). "If the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)).

    B.      Application

As an initial matter, a motion for summary judgment is framed by the allegations in the pleadings. A plaintiff cannot allege one theory of liability in a complaint and then "turn around and surprise [a defendant] at the summary judgment stage" with a different theory of liability. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (summary judgment appropriate where complaint gave "no notice of the specific factual allegations presented for the first time in [Plaintiff's] opposition to summary judgment."). That is because "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman,* 232 F.3d at 1292.

Because this is a diversity action, California law applies to the interpretation and application of the Policy. *See Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1263 (9th Cir. 1978). Under California law, when the interpretation of an insurance policy is at issue, "an insurer may 'seek[ ] summary judgment on the ground that the claim is excluded,' in which case it has 'the burden . . . to prove that the claim falls within the exclusion.'" *Roberts v. Assurance Co. of Am.*, 163 Cal. App. 4th 1398, 1406 (2008) (quoting *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal. App. 3d 210, 216 (1989)). "To satisfy its burden, an insurer need not 'disprove every possible cause of the loss' and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists." *Id.* (quoting *Alex R. Thomas & Co. v. Mut. Serv. Cas. Ins. Co.*, 98 Cal. App. 4th 66, 73 (2002)). "An insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." *Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1230 (2015) (quoting *Roberts*, 163 Cal. App. 4th at 1407).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

      1.      <u>Breach of Contract</u>

State Farm argues that summary judgment is warranted because CMC cannot establish that it breached its obligations to CMC under the Policy. Dkt. 72-1 at 18. State Farm asserts that it properly paid CMC $235,733.57 under Coverage B - Business Personal Property for the water loss and $164,500 for business income loss for a six-month POR. *Id.* at 18-19. Indeed, it asserts that it paid for eight months of business income loss. *Id.* at 19. The appraisal award determined that a six-month loss would be $116,414, and an eight-month loss would be $143,872. *Id.* As noted, State Farm paid $164,500. *Id.*

CMC argues that there is a genuine issue of material fact as to the amount that State Farm still owes CMC under the Policy. CMC claims that this amount is $216,936 for business income loss. Dkt. 77 at 13-15. This amount is calculated based on a POR of 16 months. *Id*. at 13-14.

The principal disagreement between the parties is whether the proper POR for calculating the total loss of business income should be six or 16 months. To reach its six-month POR, State Farm relied on the statement of Benson, CMC's own contractor -- which he later confirmed at his deposition -- that, starting from the time of the initial water loss, it should have taken only three to five months to repair the Insured Office. Dkt. 72-1 at 11. State Farm also relied on Plaintiff's public adjuster, who had communicated to State Farm that the repair should take two months. *Id.* at 12. State Farm further argues that it actually paid more than six months of business income loss based on the appraisal award calculations by the appraisal panel. *Id.* at 19.

To reach its 16-month POR, CMC also relies on the statements of Benson, who provided a declaration with more context for his deposition testimony. Dkt. 77 at 8, 13-14. CMC presented the declaration in support of the Opposition. Dkt. 77-3. Benson declared that he must have misunderstood the questions during his deposition or that he did not think the questions were with regard to "all aspects of the project" to restore the Insured Office to its pre-loss condition. *Id.* at 3-4. He stated that he failed to include that the source of the leaks from the floor above the Insured Office had to be corrected before the Insured Office could be repaired, and that other delays that could amount to "months" needed to be factored into the POR. *Id.* at 3. These included obtaining permits or receiving government inspections. *Id.*

State Farm contends that CMC's 16-month POR is without supporting evidence. Dkt. 78 at 6; *see also* Dkt. 78-1 ¶ 14. It argues that CMC cannot provide evidence demonstrating that the POR should be more than the three- to five-month period that Benson originally provided at his deposition. Dkt. 78 at 7. Although Benson clarified in his declaration that the POR actually should have been 12 months or more (but not 16 months), State Farm argues that this evidence does not create a material dispute for two reasons. *Id.* at 6-9. First, CMC cannot add more time to the three-month to five-month POR by including time for acts or events expressly barred by the Policy. *Id.* Second, CMC cannot submit later declarations contradicting prior deposition testimony in an attempt to show a genuine issue of material fact. *Id.* at 9. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999).

           a.      Applicable Standards

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

The Policy that governs the relationship between the parties is the basis to determine the proper POR. Under California law, the interpretation of an insurance policy is a question of law that a court decides. *Baldwin v. AAA N. Cal., Nev. & Utah Ins. Exch.*, 1 Cal. App. 5th 545, 549-50 (2016); *Schrillo Co. v. Hartford Accident & Indem. Co.*, 181 Cal. App. 3d 766, 776 (1986) ("Whether a party had a reasonable expectation of coverage is an issue of law, not one of fact."). "Insurance policies are contracts to which the normal rules of contractual interpretation apply." *Shaw Mortg. Corp. v. Peerless Ins. Co.*, 615 F. Supp. 2d 1172, 1176 (S.D. Cal. 2009) (citing *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992)); *see also Medina v. GEICO Indem. Co.*, 8 Cal. App. 5th 251, 258 (2017) (citing *Stellar v. State Farm Gen. Ins. Co.*, 157 Cal. App. 4th 1498, 1503 (2007)).

When possible, the mutual intent of the parties to a contract is to be inferred solely from the language and terms of that document. If the policy language is "clear and explicit," it governs. *Shaw*, 615 F. Supp. 2d. at 1176 (quoting *Bank of the W.*, 2 Cal. 4th at 1264). However, if the policy language is susceptible to more than one interpretation such that it is ambiguous, there is a presumption that it should be interpreted in favor of the insured because the insurer drafted the policy. *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (2010). To determine if a policy is ambiguous, a court must provisionally consider credible extrinsic evidence to determine if the policy provision is reasonably susceptible to an alternative meaning. *See Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39-41 (1968). "To protect the interests of the insured, coverage provisions are interpreted broadly, and exclusions are interpreted narrowly." *Medina*, 8 Cal. App. 5th at 259 (quoting *Stellar*, 157 Cal. App. 4th at 1503). "An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Bischel v. Fire Ins. Exch.*, 1 Cal. App. 4th 1168, 1176 (1991) (citing *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971)). Courts should not, however, "strain to create an ambiguity where none exists." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995).

The insured bears the initial burden of establishing coverage under an insurance policy. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). If the insured shows that a claim falls within the policy terms, the burden shifts to the insurer to demonstrate that an exclusion applies. *Waller*, 11 Cal. 4th at 16. Further, "to the extent [Plaintiff]'s understanding of the policy is contrary to its explicit language, [the insured's] subjective intent is not relevant." *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 965 (2010); *see also Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1112 (1987) ("It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms.*" (citations and internal quotation marks omitted)).

    b. The Terms of the Policy

In applying the foregoing rules of interpretation to the matters at issue here, the relevant terms in the Policy are clear. They are not reasonably susceptible to multiple interpretations with respect to what may be included in the POR at issue in this action.

The Policy includes the following language about a POR:

  6. "Period of Restoration": a. Means the period of time that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

> (1) Begins immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the described premises; and
>
> (2) Ends on the earlier of: (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) The date when business is resumed at a new permanent location.

Dkt. 73-3 at 66.

This language provides two conditions for determining the time period for available coverage for the POR: (i) when the events triggering the beginning of the POR occurred; and (ii) when the events marking the end of the POR occurred.

The POR starts when there is a "Covered Cause Of Loss" at the "described premises." *Id.* The Policy defines the "described premises" as "10301 Garvey Ave STE 100, El Monte[,] CA 91733-2810," *i.e.,* the Insured Office. *Id.* at 81. The Policy also provides that the POR can include the time for repairs to any additional space "if that area is the only such area that": (1) "services" the medical suite; or is (2) "used to gain access to" the medical suite. Dkt. 73-3 at 63. The Policy describes the Covered Cause Of Loss, which, as noted, is an event triggering the commencement of the POR, as an "accidental direct physical loss to Covered Property;" provided, however, there is an extensive list of exclusions. Dkt. 73-3 at 7-10. The exclusions include damage caused by "[c]ontinuous or repeated seepage, discharge or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more" and "any loss caused by . . . [c]onduct, acts[,] or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault." *Id.* at 10.

The POR ends on the earlier of: (i) "The date when the property. . . should be repaired, rebuilt or replaced . . ." or (ii) "when business is resumed. . . ." *Id.* at 66. The first possible end date is determined by the relevant facts and circumstances as to any particular claim. They are used to determine the time period within which the property "should be" repaired, which is distinct from, and not necessarily the same as, the time period during which the property is "actually" repaired. *See Lava Trading Inc. v. Hartford Fire Ins. Co.*, 365 F. Supp. 2d 434, 442-43 (S.D.N.Y. 2005) ("The purpose of providing coverage only during the 'period of restoration' is to provide a limit, where necessary, to the amount of business income recoverable in those situations where a policyholder's ability to restore its business income to previous levels may extend beyond any period during which the policyholder reasonably 'should' repair, rebuild or replace its damaged property . . . . the insured will not recover for any additional contingent business interruption loss beyond the theoretical period in the absence of expanded . . . coverage. The theoretical period can terminate while the insured is still losing sales.") (internal citations omitted); *see also Duane Reade*, 279 F. Supp. 2d at 239. As to the second possible end date, "when" suggests a time that is more evident, *i.e.,* when business resumes. Dkt. 73-3 at 66.

The Policy also includes exclusions to the POR in the same section in which the POR is defined. *Id.* It excludes "any increased period required due to the enforcement of any ordinance or law that . . . [r]egulates the construction, use or repair . . . ." *Id.* Thus, any time needed to abide by ordinances and laws, such as obtaining necessary construction permits or passing inspections, are excluded from the POR, notwithstanding that they are both commonly part of repairing, rebuilding or replacing property.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

*See, e.g., Singh v. Amguard Ins. Co.*, No. 16-cv-0618 PSG (AJWx), 2017 WL 2423795, at *4 (C.D. Cal. Feb. 17, 2017) (insurance policy language excluding any increase in the POR due to laws regulating the "construction, use or repair" of a property applied to the time required to obtain permits and pass required inspections); *see also Brandywine Flowers, Inc. v. W. Am. Ins. Co.*, No. CIV. A. 92C-04-196, 1993 WL 133176, at *2 (Del. Super. Ct. Apr. 19, 1993), *aff'd*, 633 A.2d 368 (Del. 1993) (excluding the permitting process from the POR); *Conley & Tibbitts Props., LLC v. Leatherstocking Co-op. Ins. Co.*, 109 A.D.3d 1198 (N.Y. App. Div. 2013) (same).

        c.   Application

Based on the terms of the Policy, and the evidence presented in connection with the Motion, there is no genuine issue of material fact as to whether CMC's claim for a 16-month POR is viable. It is not. In light of the evidence presented in support of the Motion, including the terms of the Policy discussed above, CMC has not presented sufficient responsive evidence to warrant a determination that there is a genuine issue of fact on this matter. *See Anderson*, 477 U.S. at 250.

CMC presents Benson's declaration to support its claim that there is a genuine issue of fact as to whether there is a 16-month POR. Benson declares that this time period included the "four months" of actual time CMC had to wait for the tenant who had leased the space above the Insured Office and from which the leaks originated to make necessary repairs.[3] The declaration does not support CMC's claim. *First*, Benson only stated that "it would not be unrealistic for the repairs to take 12 months or more" to restore the Insured Office, not 16 months.  Dkt. 77-3, ¶ 9. This statement is a double negative; it is not the same as an affirmative statement that the necessary repairs would realistically require at least 12 months. However, even assuming that it can be construed as such an affirmative statement, there is not a basis on which CMC can simply add four months to this time period. Benson had already included those four months in making his 12-month estimate. *Id.* ("Considering that the second-floor tenant's bathrooms needed to be fixed before beginning repairs to CMC's premises, the total time . . . could take approximately twelve months."). Nor can CMC argue that the POR must include the actual time it had to wait to make repairs because the Policy provides that the POR ends when the Insured Office "should be" repaired, not the actual time when it "is" repaired. Dkt. 73-3 at 66; *see also Lava Trading*, 365 F. Supp. 2d at 442.

*Second*, Benson's reasoning for a 12-month POR, rather than his original POR of three to five months,

---

[3] State Farm argues that Benson's declaration should be rejected as proffering sham testimony. Dkt. 78-1 at 18; *see Cleveland*, 526 U.S at 806 ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement" without sufficient explanation); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Benson's declaration includes statements that contradict his deposition testimony, where he stated that the POR was between three and five months. Although the testimony and declaration state different time periods, this distinction does not warrant a finding that the Declaration should be deemed a sham. *See, e.g., Wilson v. J.P. Allen Co.,* 57 F. Supp. 3d 1249, 1260 (C.D. Cal. 2014). In the declaration, Benson explained the reasons for his testimony as to different PORs. *See Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir.1995) ("[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

is not fully supported by the Policy. Thus, his estimate includes "months" for events expressly excluded under the Policy. Benson declares that the POR could be 12 months because he previously did not include delays due to "the permitting process and inspection requirements — which depend on the speed of government agencies" and which, in Benson's experience, "can add months of delay to a project such as this one." Dkt. 77-3 ¶ 9. As discussed above, these delays are expressly excluded under the Policy in calculating the POR. *See* Dkt. 73-3 at 66; *Singh*, 2017 WL 2423795, at *4.

Benson's 12-month POR also includes delays based on waiting for the repair of the bathroom of the tenant whose space was above the Insured Office. Dkt. 77-3, ¶ 9. State Farm argues that whether this delay should be covered in the Policy is discussed in the section addressing extra expenses or an increase in loss of income. Dkt. 83 at 5-6; *see also* Dkt. 73-3 at 63-65. This section covers extra expenses that CMC might incur during the POR. Dkt. 73-3 at 63. State Farm argues that there are exclusions from such potential extra expenses. They include that State Farm "will not pay for . . . [a]ny 'Extra Expense', or increase of 'Loss of Income', caused by . . . [d]elay in rebuilding, repairing or replacing the property . . . due to interference at the location . . . by strikers, picketers, or any others charged with rebuilding, repairing, or replacing property." *Id.* at 65. This provision expressly excludes coverage for a potentially longer -- *i.e.*, "'Extra Expense', or increase of 'Loss of Income'" -- POR based on delays caused by those who are engaged to repair a property. *Id.*; *see cf. Duane Reade*, 279 F. Supp. 2d at 239 (any losses continuing beyond the "hypothetical . . . (as opposed to actual) time frame for rebuilding . . . would be addressed by the 'Extended Recovery Period' provision in the Policy."). State Farm argues that the tenant above the Insured Office was also a person obligated or "charged" with "rebuilding, repairing or replacing" the property. Dkt. 83 at 5-6. This argument is not persuasive.

The Policy groups "others charged with rebuilding . . . property" along with "strikers" and "picketers." Dkt. 73-3 at 65. It is not reasonable to include the tenant located above the Insured Office within the category of "others charged," *e.g*, contractors, who are engaged to repair a property. Such "others" are grouped with "strikers" and "picketers." *See Hamilton v. Madigan*, 961 F.2d 838, 840 (9th Cir. 1992) (noting that it is a basic canon of construction that "when general and specific words are associated, as . . . [an] accompanying list of examples, then the general words are construed to embrace things similar to those enumerated by the specific words."). Further, any ambiguity in this provision results in an interpretation favorable to the insured. A reasonable interpretation of the provision would be that "others charged" refers only to those engaged by the owner of the property or other tenants to make repairs, not to a building tenant who may be responsible for engaging someone else to make such repairs.

The Covered Cause Of Loss triggering the start of the POR was the June 3, 2016 water loss that occurred in the Insured Office. Dkt. 77-1 ¶ 9. The POR is calculated as the theoretical time it "should" take to repair and rebuild the Insured Office with "reasonable speed" to a "similar quality" prior to the water loss. Dkt. 73-3 at 66. The action by the tenant above the Insured Office in delaying necessary repairs of the elements of the bathroom directly above the Insured Office that were causing repeated seepage, does not itself constitute a Covered Cause Of Loss triggering the start of the POR clock. The Policy excludes such an act in the Covered Cause Of Loss exclusions. *See id.* at 10. ("We do not insure under any coverage for any loss caused by . . . [c]onduct, acts or decisions, including the failure to . . . decide, of any person . . . whether intentional, wrongful, negligent or without fault."). Any repeated seepage is excluded from being treated as a Covered Cause Of Loss triggering the start of the POR as well. *See id.* (excluding coverage for "[c]ontinuous or repeated seepage, discharge or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.").

Because the conduct of the tenant above the Insured Office does not constitute a Covered Cause Of Loss triggering the start of the POR, it would be unreasonable to conclude that those events could then constitute causes continuing or extending the POR. As the Policy states, State Farm is only obligated to cover business income loss for the "suspension" of "'operations' during the 'period of restoration'" that are "caused by a Covered Cause Of Loss." *Id.* at 63. This language is clear.

CMC argues that the "acts or decisions" language in the Policy is in conflict with the following language in a different provision: "'Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.'" Dkt. 82 at 11; Dkt. 73-3 at 24. However, this language appears under the heading "Control of Property," which is properly construed as a term that applies with respect to the "control" of the "property" at issue by the insured. Dkt. 73-3 at 24. It is unrelated to the conduct of another tenant that could constitute a Covered Cause of Loss. Moreover, this language is part of a general term of the Policy and is narrowed by an endorsement section of the Policy that defines more specifically business income loss and the POR. *Compare* Dkt. 73-3 at 24 *with* Dkt. 73-3 at 66. These more specific sections control. *See Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 216 Cal. App. 4th 1040, 1057 (2013) ("If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." (citing *Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 50 n.4 (1997)).

CMC further argues that the Policy does not state that the POR cannot be extended due to acts or events outside the "described premises." Dkt. 82 at 12-19. Based on this premise, CMC contends that it would be reasonable for CMC to have expected that the POR would be extended due to events "outside" the described premises, necessary to complete repair "inside" the described premises. *Id.* at 13-14. CMC notes that this interpretation is supported because it shares the building with other tenants. *Id.*[4]

CMC's position is not persuasive. As State Farm argues, the language of the Policy states expressly that the POR should only include the time needed to repair the "described premises," *i.e.*, the Insured Office, not the time needed for the repair of the space of another tenant or any other area of the building. This interpretation is confirmed by the limited exception to this rule that is stated in the Policy, *i.e.*, that the POR may include the time necessary to complete repairs to two other areas of the building -- those areas necessary to service and gain access to the described premises. Dkt. 83 at 2-3. The repair of the bathroom in the space leased by another tenant above the Insured Office does not fall within this limited exception. Both *Duane Reade* and *Streamline Capital* are instructive on this issue. Both addressed the POR in the context of leased premises in a larger building, and both tied the POR to the repairs of the leased premises, and not to those in other areas in the building. *Id.* at 4-5.

CMC argues that *Duane Reade* and *Streamline Capital* focused on weighing the reasonableness of a POR that includes the time to rebuild the World Trade Center ("WTC") against one that includes the

---

[4] CMC also argues that the Policy creates a duty to mitigate further damage. From this it contends that repairing the damage caused by the leak to the Insured Office, without repairing the source of the leak, would be inconsistent with this obligation. Dkt. 82 at 14. However, CMC has not presented any evidence that it delayed repairing the Insured Office due to its duty to mitigate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

time to relocate the businesses. Dkt. 82 at 15-17. Therefore, CMC contends that the decisions are distinguishable because there is no similar tradeoff in this case. *Id.* at 17. Moreover, neither decision addressed whether an insurer should include in the POR the time it takes to repair something that is related to, and should precede the necessary repairs of, the space of the insured. *Id.* at 18. CMC also argues that the length of the POR is an issue of fact that should be decided by a jury. *Id.* at 18-19. *See Brulee v. GEICO Ins. Agency Inc.*, No. 1:17-cv-01434-JLT, 2018 WL 3491680, at *11 (E.D. Cal. July 19, 2018) ("what constitutes a reasonable period to carry out the necessary repairs and resume business for purposes of the period of restoration is a question for the jury.").

*Duane Reade* and *Streamline Capital* each made a determination as to the length of the POR. Each concluded that it does not include the time needed to rebuild other portions of the building, *i.e.*, those where the insured did not lease space. Thus, each concluded that the insurance policies expressly provided coverage for restoring the space of the insured -- the described premises -- and not the rest of the building in which the described premises were located. *See Duane Reade*, 411 F.3d at 396 ("[I]t would be entirely unreasonable to interpret the Restoration Period to include the time it would take for [the insured] to resume operations in a store located at its former site where that site was neither the subject of the insurance policy nor expressly provided for in the calculus set forth in the Restoration Period."); *Streamline Capital, L.L.C. v. Hartford Cas. Ins. Co.*, No. 02 Civ. 8123 (NRB), 2003 WL 22004888, at *9 (S.D.N.Y. Aug. 25, 2003) ("[W]e find that the phrase 'property at the described premises' used in the period of restoration section means the plaintiff's own personal property in its office suite."). Furthermore, although the reasonableness of a POR calculation may be a question of fact, under California law, whether an insurance policy excludes certain acts or events in the calculation of a POR, *i.e.*, the interpretation of an insurance policy, is a question of law. *See Baldwin*, 1 Cal. App. 5th at 549-50.

CMC next argues that because the section in the Policy defining the POR includes only a single exclusion -- one that is repeated again in the section providing exclusions to a Covered Cause Of Loss -- it is reasonable to interpret the Policy as having only a single exclusion to the POR. It contends that this exclusion applies only to delays caused by "ordinance[s] or law[s]." Dkt. 82 at 9-11. However, this argument overlooks that, before the exclusions of the POR are stated in the Policy, it has a section defining a POR. This definition includes conditions that must be satisfied to trigger the POR. They include that a "Covered Cause Of Loss" is the cause of a loss. No more persuasive is CMC's argument that, unless its interpretation of the Policy is accepted, the language of the Policy would be cumulative. The language in the two sections is not identical. *Compare* Dkt. 73-3 at 9 *with* Dkt. 73-3 at 66. Moreover, even if it were, it is reasonable to interpret the Policy as stating that one "ordinance or law" can be the cause of an accident, while a separate "ordinance or law" can simultaneously cause a delay to repairs extending the POR. *See Hervey*, 185 Cal. App. 4th at 965 (a plaintiff's subjective intent is not relevant to the extent its understanding of an insurance policy is contrary to its express language).

For these reasons, the coverage provided by the Policy does not support Benson's calculation of the POR as a 12-month period. His calculation included time caused by delays in making repairs due to the need to comply with government-mandated permitting or inspections, those caused by the acts or decisions of the tenant who leased space above the Insured Office, and delays caused by repeated seepage. The POR is a time period that starts when a Covered Cause Of Loss occurs and ends at the time it "should" take to repair the damage to the "described premises" caused by a Covered Cause Of Loss. Accordingly, it is not reasonable to interpret the Policy to state that the POR should be extended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
|---|---|---|---|
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

by what could be indefinite periods of time to repair property outside the described premises, dependent on factors outside the control of both State Farm and CMC. *See Duane Reade*, 411 F.3d at 396; *Lava Trading*, 365 F. Supp. 2d at 442.

Benson, who was engaged by CMC as the contractor to make the necessary repairs, as well as the public adjuster, previously calculated the POR at no more than five months. Dkt. 77-1 ¶¶ 14, 17. Benson confirmed this POR in his deposition testimony. *Id.* ¶ 15. Based on the appraisal award, State Farm issued a payment to CMC that covered eight months of lost business income (June 2016 – January 2017). *Id.* ¶ 69. Based on the evidence submitted by the parties, State Farm has met its burden of demonstrating that the evidence does not support CMC's claim for a 16-month POR or that State Farm breached the contract by paying an insufficient amount for business income loss. *See Celotex*, 477 U.S. at 323. Moreover, CMC has failed to show a genuine issue of material fact with respect to the issues relevant to the Motion. *See id.*

For the foregoing reasons, the Motion is **GRANTED** as to the breach of contract claim. There is no genuine issue of fact as to whether State Farm paid the amount due to Plaintiff under the terms of the Policy.

      2.    Breach of the Covenant of Good Faith and Fair Dealing, *Brandt* Attorney's Fees and Punitive Damages

The claims for breach of the covenant of good faith and fair dealing as well as the associated request for an award of punitive damages are dependent on the breach of contract claim. *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10, 1153 (1990) (requiring an insured to demonstrate breach of contract before it can recover for bad faith); *Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1219, 1231 (C.D. Cal. 2002) ("[A] plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive summary judgment on a related claim for punitive damages."); *see also Kopczynski v. Prudential Ins. Co.*, 164 Cal. App. 3d 846, 849 (1985). Similarly, the request for an award of attorney's fees pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813, 815, 817 (1985) is precluded. Therefore, the Motion is **GRANTED** on the claims for breach of the covenant of good faith and fair dealing, the request for punitive damages and an award of attorney's fees under *Brandt*.

**VI.**    **Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. Within 14 days of the issuance of this Order, after meeting and conferring with Plaintiff's counsel in an effort to reach an agreement on the form of a judgment, Defendant shall lodge a proposed judgment. If Plaintiff does not object to its form, its counsel shall sign the proposed judgment with that limitation. If Plaintiff objects to the form, within seven days of the lodging of the proposed judgment, Plaintiff shall file its objections in accordance with the Local Rules.

**IT IS SO ORDERED.**

    :    

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV17-07672-JAK (JPR) | Date | September 5, 2023 |
| Title | Comprehensive Medical Center, Inc. v. State Farm Mutual Automobile Insurance | | |

Initials of Preparer    tj